IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATIONAL URBAN LEAGUE, on behalf of itself and its members; COMMON CAUSE, on behalf of itself and its members; LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, on behalf of itself and its members,<br><br>Plaintiffs,<br><br>vs.<br><br>LOUIS DEJOY, in his official capacity as Postmaster General; and the UNITED STATES POSTAL SERVICE,<br><br>Defendants. | No. 1:20-cv-2391 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR AN EXTENSION OF TIME**

At the eleventh hour, Defendants ask for more time to respond to the complaint under an already-extended deadline, citing other litigation obligations and a federal holiday of which they have been long aware. Defendants make this request without acknowledging this Court's ruling that Defendants have engaged in illegal conduct under policies that Defendants have still not rescinded, Dkt.77, without acknowledging the manifest harm that their delays and inaction have *already* inflicted on Plaintiffs and their members, and without acknowledging the additional harm that their continued foot-dragging threatens in the rapidly approaching electoral contests in Georgia and elsewhere. The Court should deny Defendants' motion.

Plaintiffs filed their complaint on August 18, 2020, and served all Defendants by August 26. *See* Dkt.48-1. Under the Federal Rules, Defendants' response to Plaintiffs' complaint

1

was due on October 25, *see* Fed. R. Civ. P. 12(a)(2), and yet Defendants failed to respond by that date. Instead, on October 29—four days *after* Defendants' response was due—the Court *sua sponte* extended Defendants' time to answer the complaint by another 30 days, to November 28. *See* Dkt.77.

Under the current deadline, Defendants will have had 94 days—well more than the 60 days provided by the Federal Rules—to determine how to respond to Plaintiffs' complaint and to draft that response. Indeed, although Defendants invoke the similarity between this case and others as an excuse for delay, any overlap should make it *easier*, not harder, for Defendants to formulate their responses. Nor do Defendants cite any support for the notion that a litigant's obligation to produce "discovery" in other cases, Dkt.79 at 1, can serve as good cause for an extension. Defendants have had ample time to draft a response to Plaintiffs' complaint, a fact that by itself provides sufficient reason to deny the motion.

But there is more. Defendants have *already* benefited from the passage of time in this case. Defendants initiated settlement negotiations which later they broke off when the November 3 election was close enough that effectual relief by court order was out of reach. This Court stated, in its order denying Plaintiffs' motion for preliminary injunction, that Plaintiffs' extended negotiations over compromise relief with the Government, and acquiescence in the Government's requests for extensions of time, weighed against a finding that "Plaintiffs truly view[ed] … deficiencies in USPS's ability or intent to timely deliver Election Mail as perils to our democracy." *Memorandum Opinion Accompanying Order Denying Preliminary Injunction*, Dkt.76 at 24. In light of that finding, Plaintiffs have declined to accede to any more Government extensions.

Nor are Defendants correct that an extension will cause no prejudice to Plaintiffs "because the November 3, 2020 election has already taken place." Dkt. 79 at 2. Defendants have only

was due on October 25, *see* Fed. R. Civ. P. 12(a)(2), and yet Defendants failed to respond by that date. Instead, on October 29—four days *after* Defendants' response was due—the Court *sua sponte* extended Defendants' time to answer the complaint by another 30 days, to November 28. *See* Dkt.77.

Under the current deadline, Defendants will have had 94 days—well more than the 60 days provided by the Federal Rules—to determine how to respond to Plaintiffs' complaint and to draft that response. Indeed, although Defendants invoke the similarity between this case and others as an excuse for delay, any overlap should make it *easier*, not harder, for Defendants to formulate their responses. Nor do Defendants cite any support for the notion that a litigant's obligation to produce "discovery" in other cases, Dkt.79 at 1, can serve as good cause for an extension. Defendants have had ample time to draft a response to Plaintiffs' complaint, a fact that by itself provides sufficient reason to deny the motion.

But there is more. Defendants have *already* benefited from the passage of time in this case. Defendants initiated settlement negotiations which later they broke off when the November 3 election was close enough that effectual relief by court order was out of reach. This Court stated, in its order denying Plaintiffs' motion for preliminary injunction, that Plaintiffs' extended negotiations over compromise relief with the Government, and acquiescence in the Government's requests for extensions of time, weighed against a finding that "Plaintiffs truly view[ed] … deficiencies in USPS's ability or intent to timely deliver Election Mail as perils to our democracy." *Memorandum Opinion Accompanying Order Denying Preliminary Injunction*, Dkt.76 at 24. In light of that finding, Plaintiffs have declined to accede to any more Government extensions.

Nor are Defendants correct that an extension will cause no prejudice to Plaintiffs "because the November 3, 2020 election has already taken place." Dkt. 79 at 2. Defendants have only

was due on October 25, *see* Fed. R. Civ. P. 12(a)(2), and yet Defendants failed to respond by that date. Instead, on October 29—four days *after* Defendants' response was due—the Court *sua sponte* extended Defendants' time to answer the complaint by another 30 days, to November 28. *See* Dkt.77.

Under the current deadline, Defendants will have had 94 days—well more than the 60 days provided by the Federal Rules—to determine how to respond to Plaintiffs' complaint and to draft that response. Indeed, although Defendants invoke the similarity between this case and others as an excuse for delay, any overlap should make it *easier*, not harder, for Defendants to formulate their responses. Nor do Defendants cite any support for the notion that a litigant's obligation to produce "discovery" in other cases, Dkt.79 at 1, can serve as good cause for an extension. Defendants have had ample time to draft a response to Plaintiffs' complaint, a fact that by itself provides sufficient reason to deny the motion.

But there is more. Defendants have *already* benefited from the passage of time in this case. Defendants initiated settlement negotiations which later they broke off when the November 3 election was close enough that effectual relief by court order was out of reach. This Court stated, in its order denying Plaintiffs' motion for preliminary injunction, that Plaintiffs' extended negotiations over compromise relief with the Government, and acquiescence in the Government's requests for extensions of time, weighed against a finding that "Plaintiffs truly view[ed] … deficiencies in USPS's ability or intent to timely deliver Election Mail as perils to our democracy." *Memorandum Opinion Accompanying Order Denying Preliminary Injunction*, Dkt.76 at 24. In light of that finding, Plaintiffs have declined to accede to any more Government extensions.

Nor are Defendants correct that an extension will cause no prejudice to Plaintiffs "because the November 3, 2020 election has already taken place." Dkt. 79 at 2. Defendants have only

partially suspended—and still have not rescinded—the policies that this Court, in its preliminary injunction ruling, recognized as unlawful. In the November 3 election, Defendants' failure to comply fully with the injunctions to which they were subject had precisely the effect that Plaintiffs feared: Defendants' conduct disenfranchised thousands of mail voters. *See* Jacob Bogage & Christopher Ingraham, *USPS Data Shows Thousands of Mailed Ballots Missed Election Day Deadlines*, Washington Post, Nov. 4, 2020, https://archive.is/hAZ9e.

These issues are of particular concern in light of the upcoming high-stakes elections in Georgia, where history threatens to repeat itself. *See* Jacob Bogage & Christopher Ingraham, *USPS Processed 150,000 Ballots After Election Day, Jeopardizing Thousands of Votes*, Washington Post, Nov. 6, 2020, https://archive.is/dVZyX (reporting that USPS delivered 853 Georgia ballots on Nov. 4 and 610 on Nov. 5, all too late to be counted). Expeditious resolution of this case remains essential. In the days before the November 3 general election, the USPS district for Atlanta reported significant delays in the processing of mail ballots.[*] In conjunction with parallel litigation, Defendants have been ordered to respond to discovery about their efforts in Georgia prior to Election Day, which Defendants are required to promptly produce to Plaintiffs in this litigation. This discovery will be critical to determining whether further injunctive relief is appropriate and necessary. Keeping the already-once-extended deadline in place will allow Plaintiffs to request further injunctive relief as necessary to prevent Defendants' unlawful conduct from infecting another crucial election.

The motion should be denied.

---

[*] *See Vote Forward v. DeJoy*, No. 1:20-cv-02405-EGS (D.D.C.), Dkt.78-2, https://bit.ly/39abxYI (showing, e.g., that on November 3, 2020, only 65.13 percent of first class mail and 80.36 percent of marketing mail in Atlanta was delivered on time); *see id.* Dkt. 78-3, https://bit.ly/2URQcLt (showing that, in the days leading up to the November 3 election, the "processing scores" for mail ballots in Atlanta lagged behind the national scores by significant margins).

| Dated: November 24, 2020 | Respectfully submitted, |
|---|---|
| **LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW** | **ARNOLD & PORTER KAYE SCHOLER LLP** |
| | /s/ *Kenneth L. Chernof* |
| Kristen Clarke* | Kenneth L. Chernof (Bar No. 17195) |
| Jon M. Greenbaum* | John A. Freedman (Bar No. 20276) |
| Ezra D. Rosenberg* | Allon Kedem* |
| Bradley S. Phillips* | Andrew Tutt* |
| Ajay Saini** | Daniel Jacobson* |
| Ryan Snow* | Lindsey D. Carson* |
| Lawyers' Committee for Civil Rights Under Law | Stephen K. Wirth* |
| 1500 K Street NW | Kaitlin Konkel (Bar No. 20001) |
| Washington, DC 20001 | Graham W. White (admission pending) |
| jgreenbaum@lawyerscommittee.org | Leslie C. Bailey* |
| erosenberg@lawyerscommittee.org | Catherine McCarthy* |
| bphillips@lawyerscommittee.org | Arnold & Porter Kaye Scholer LLP |
| asaini@lawyerscommittee.org | 601 Massachusetts Avenue NW |
| rsnow@lawyerscommittee.org | Washington, DC 20001-3743 |
| | (202) 942-5000 |
| | ken.chernof@arnoldporter.com |
| | |
| | Douglas A. Winthrop* |
| | Benjamin T. Halbig* |
| | Arnold & Porter Kaye Scholer LLP |
| | Three Embarcadero Center - 10th Floor |
| | San Francisco, CA 94111-4024 |
| | douglas.winthrop@arnoldporter.com |

*Counsel for Plaintiffs National Urban League, Common Cause, and
League of Women Voters of the United States*

\* *Pro hac vice*
\*\* *Pro hac vice* application forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that this document will be served on Defendants in accordance with Fed. R. Civ. P. 4. Plaintiffs do not plan to send courtesy copies of this document to the Court because it is fewer than 15 pages in length.

*/s/ Kenneth L. Chernof*
Kenneth L. Chernof
601 Massachusetts Ave., NW
Washington, D.C., 20001
T: (202) 942-5000
ken.chernof@arnoldporter.com
